LLC v. Ward No. 14-3625 The District Court erred by dismissing this complaint from Rule 12-B-6, and unless the Court wants to start somewhere else, I'm going to start with the substitute process. This case, fundamentally, is about an abuse of power by corrupt municipal officials. The complaint alleges a systematic pattern of harassment against Mr. Huff that was fueled by corruption and by personal antipathy. Well, you know, the bar is pretty high for substantive due process. Your friends say improper motive is not going to do it, and that's what's been alleged. I respectfully disagree with you, Your Honor. Well, that's what they say. I'm not saying I agree. We haven't simply alleged improper motive. Under the Shocks of Conscience standard, which governs substantive due process as it is developed in this circuit, where the complaint, or at summary judgment, where you have the plaintiff as marshal of evidence, that indicates that the municipal official did something that takes the case out of the typical mine run, land use dispute. Either a systematic pattern of harassment, pursuit of a personal vendetta, actual corruption where the municipal officials were making land use decisions, not on the basis of legitimate land use considerations, but on the basis of private economic interests. When you have those kinds of elements, that is sufficient to state a plausible claim. What's your best case along those lines, that that shocks the conscience in a land dispute such that substantive due process would lie? You mean the best authority? Yeah. The best authority, I think, on that point, close to the United Artists, would be counter-concrete. I forget how to pronounce it. What happened in that case is, again, that was also, as I recall, at the 12B6 stage, where the plaintiff has standing gravel operation and alleged that it was denied a certificate of occupancy. But that case relied on the analysis in Blanche Road Court, which was abrogated by United Artists. My recollection, Your Honor, is that that case relied on the analysis of Blanche Road for purposes of determining whether the plaintiff was right. I don't believe that it relied on Blanche Road for purposes of determining whether it stated in 12B6. In any event, it co-stated United Artists. There's no indication that the panel was attempting to depart from United Artists. And it is a precedential decision of a panel of the circuit, which means it is binding on this panel. That was an en bloc review. And under the court in that case ruled that the facts alleged in that complaint would show evidence of corrupt motive by the municipal officials who wanted to arbitrarily shut down the standing gravel operation. Well, what's the corrupt motive of Ward here? The corrupt motive of Ward is, aside from personal animus, the private economic interest that he had was that Ward enjoyed an ingress, egress, access easement. The way this property, this property, the Huff property and the Ward property were once part of the Russian border. Right. We know that. We know the history. We know the easement, the driveway. We know all that. Okay. Even the speed bump, we know that. We know that. Okay. But what's the corrupt, corrupt motive? I can see neighbors have fights, et cetera, malicious campaign, but corrupt? The corrupt motive is that Ward used his public office in order to advance his personal interest in maximizing his rights. So that's abuse of power. That is abuse of power. Correct. And that shocks our conscience. I'm sorry? And that shocks our conscience. It should shock your conscience. Yes. And it certainly meets the standard, and admittedly shocks the conscience, you know, that there's some difficulty, courts have had some difficulty trying to put some meat on that standard of conduct. But you know it like pornography, you know it when you see it. Well. Feel it. I think it's the second time today you've said that. I don't know. Well, I think it's a little more concrete than that. Like I said, I think that the case law in the circuit has developed both at this level of this court and in the district courts. The courts have identified certain elements, like the corrupt motive, like the pattern of harassment, that are indicative of conduct that shocks the conscience, which is another way of saying it's indicative of conduct that arbitrarily deprives a landowner of substantive rights. The complaint here alleges all three of those elements, alleges pattern of harassment, alleges corrupt motive. Well, it does as to Ward, and it does as to Fox. Correct. Perhaps, you know, with the allegations. If, I mean, at least there's some allegations there. But I'm having difficulty with the other players as to how there's any allegation even that would come close. Well, with respect to the individual township community members, the basis for their direct liability is that they ratified Fox's conduct in 2012. Well, but you ratify something, and then something happens pursuant to that ratification. Here, there was no conduct that occurred after the purported ratification, was there? Well, I don't think there's any case in this circuit that definitively resolves the question of whether post-action ratification is sufficient. Well, I don't know of a case where that has been held to be sufficient. Well, in the Ninth Circuit, the Amun case, which we cite in our reply, as I recall, it was in a slightly different context. It was the context of municipal liability, where under the ratification prong of the Monell line of cases. And there, the court ruled that even though the ratification occurred after the underlying conduct by the municipal official, that was sufficient to state a claim. Because, after all, ratification by a state government always takes place after the original underlying conduct. That's why it's been ratified. So, I think it's not a substantive process. Well, can I ask you a question with a slightly different lens, maybe? In order, if we're looking at this as an immunity issue, it's got to be clearly established. Isn't this kind of, by its nature, very amorphous? Can it be really clear that they've violated, you know, somebody's constitutional rights? Two responses on that, Your Honor. First, none of the defendants have argued a clearly established prong involved by the plaintiff. This whole case was briefed, was decided below, and briefed solely on the issue of whether the plaintiff stated a plausible claim to violate constitutional rights. The first prong was the saucer analysis. I would also submit, with respect to the submit, that resolving, if the court, even though nobody's briefed it, would move to the clearly, would consider the clearly established prong, it's premature on motion to dismiss. I mean, especially in a case like this, to be able to really inform whether... Well, it's not unusual to consider whether qualified immunity should be granted at the motion to dismiss phase, right? It happens. But in a fact... It tends to happen more in cases where the facts are relatively simple. Here, the facts are relatively complex. And to determine, for example, whether Fox, as a reasonable official, should have realized that his conduct was violating the Huff's constitutional rights, that really requires a full record at the summary judgment stage. Would you mind dealing with the equal protection argument? Sure. That was actually what I was going to move to next. Okay, great. So the complaint pleads an equal protection claim under the OLEC class of one theory, pursuant to which a plaintiff, even though they are not a member of the subject class, if they can plead and prove that they were targeted for adverse treatment, uniquely singled out for adverse treatment, that other similarly situated persons did not suffer, that states a claim for violation of equal protection. The district court below ruled that where the complaint fell short was in its failure to specifically identify another flesh and blood human being who was similarly situated. Our contention before this court is that that's an incorrect legal standard. The correct standard is whether the complaint states a plausible claim for that similarly situated individual's existence. Well, and there's no rational basis for the difference in treatment. Now, I haven't heard or seen anything that explains what really was wrong with what Mr. Huff was doing as a matter of law. In other words, you can say there's no rational basis for their conduct, but if there were violations of laws, and maybe I'll hear from your colleagues about this, then there would be an issue about rational basis. But was there a rational basis offered, or has there been one for their conduct? No, there wasn't. And I'll do you one better, Your Honor. Okay? One of the things we specifically allege has to do with Fox's requirement that Huff submit a revised will and say he wrote it under control. Right. Which he did. Which he did. Right. Fox then issued, six months later, a notice of violation, the premise of which is that Of the revised plan, right? Of the original plan. Okay. Which hasn't been remediated in the revised plan. That's right. Which makes it inherently irrational and arbitrary. So you would say the concept of no legitimate purpose is apparent here? Absolutely. And with respect to whether... Or, if not apparent, it's not alleged. It's alleged that there was no legitimate purpose, which arguably should be sufficient at the plea trial. That's right. And with respect to the ground that concerned the district court, the pattern of harassment that has been alleged here is uniquely tied to Mr. Huff and to the property. Warhead personally and Mr. Ward Huff, he had an amusement. Fox, who was trying to further the interests of his private client, the New Jersey Conservation Foundation, the Conservation Foundation held the Conservation Agency to own the property. The whole pattern of behavior is uniquely tied to this property. That in and of itself, following the E-7 circuit in Ganofsky, that in and of itself establishes the plausibility that Mr. Huff was uniquely targeted and singled out for adverse treatment. In my remaining time, and unless there's something else specific the court wants to address, I'll touch on the municipal liability point of district guardians liability. Under the McGreevey decision by this court, which did a very careful analysis of the prevailing Supreme Court law in this area, which is complicated and not always easy to follow. But this court has teased out three different ways in which municipality can be held liable under 1983. The first is the traditional proof of customer policy. The second is where the underlying conduct has been ratified by municipal policy makers, thereby making that official conduct of the municipality. And the third is where the conduct itself is undertaken by an individual who is himself a municipal policy maker. Well, the Hill case points out it's got to be sort of the final and unreviewable person. Now, I know it seems that it says the township authority, which actually could be him, so you can't appeal to him. But then also, can it be appealed to the State Soil Conservation Committee? Wouldn't that be the sort of final decision maker? May I answer? I'm out of time. Yeah, sure. The reason I'm chuckling is because there was at one point where we attempted to appeal a ruling to the county soil, and actually it may have even been the state, based on the position they had in the jurisdiction. So the answer to your question is, at least with respect to the issues from that notice of violation, if FOX's discretion is unreviewable. Is that in the record someplace? I don't believe it is. Okay. But your position on this is that FOX was the policy maker with respect to the soil disturbance ordinance. That is correct. And in addition, our position is that his conduct was ratified by the township committee. Okay. Thank you. At the end of the day, we have a 32-page single-faced typed opinion in this case that the district court wrote, really addressing these arguments with great care. Would you agree with that? No. I would not agree that he addressed them with great care. Indeed, most of the issues that Judge McNulty resolved, he raised to his sponte, and he didn't receive a briefing from the parties. To take an example, the township never made him an argument. Okay. That was raised to his sponte by the district court. He didn't entertain a briefing, and he didn't entertain an argument. So I would respectfully disagree with your Honor's character. Okay. Thank you. Thank you. My name is David Pack. I'm on the law firm of Thomas P. Hamilton and Associates, and I represent the defendant of Helms, Edward J. Ward II, Harding Township, the Harding Township Committee, Marshall Harper, Louis Lanserati, You must be very rich. You know, we should give him his full eight minutes. That took 30 seconds. It's our position that Judge McNulty's decision was correct. Essentially, this entire case revolves around the local land use dispute concerning two easements on the appellant's property. And therefore, it's our opinion, and I think Judge McNulty got it right, that no constitutional cause of action exists, and that all the aspersions and all the speculative language contained in the plaintiff's complaint doesn't transport what is essentially a land use dispute into a constitutional argument. But this isn't your normal case, where someone who's been frustrated by a denial of permits or whatever is claiming that something was arbitrarily denied and he was blocked in his efforts. There's a lot of proactive, one would say an orchestrated campaign, alleged, I mean, we're at the allegation stage, against these defendants as to how he was being thwarted. And I don't know, perhaps, you know, in the pleading stage, you will come up with whatever legitimate purpose there is, but it appears from the pleading that there was nothing to the, I mean, the acts of the defendants were baseless, and it's alleged numerous times they were baseless. And that's, I'm just talking about the allegations here. So that a jury faced with something where it's clear that allegation, or that it was baseless, might say, you know, deliberate indifference, bordering on shocking the conscience, if you're one in Huff's position. I absolutely disagree with that. And the reason is this is a unique property. And here's part of the problem. Mr. Huff doesn't own this property unencumbered. It's encumbered. It's subject to two easements. Okay, well, we'll get to that when we have discovery and when you answer. But right now the allegation is in the complaint, and it's replete with assertions as to how Huff was wrong. Now, you'd get your day in court as to whether there's anything to them. But based upon the allegations, it's very tough to say this is your normal land dispute. The complaint, the Second Amendment complaint, which is an issue, in no way, shape, or form does it ever argue that there aren't two easements on the land. It never argues that Mr. Ward, who has a right, an ingress and egress right to the driveway, it never argues, the complaint never argues. Well, it's clear that he does have, he does have that right. And the complaint, so if I move into, if I may, just to pivot that off to the real meat here, a substantive due process violation, Mr. Ward calls the police twice. Those are the two allegations in the Second Amendment complaint that he calls the police, saying that he's a recognition activist, you're blocking his ingress and egress rights. That's a substantive due process violation? Well, that's not the whole of the complaint. Well, no, no, and then the next part is, with this, that's really all. Yeah, there's allegations about corruption and other things. Well, and then we get into what happened with the second easement, the New Jersey Conservation, but that's really what it is, it's two easements that created this problem. Mr. Ward and Mr. Huff is renovating this property, but when he's doing that, he's got to be conscious of the fact that his property is subject to two easements. So he shot the conscience. United Artists make it pretty clear, votive doesn't matter, even arbitrariness doesn't matter. What you have to look at is, look at all the cases that were cited in the plaintiff's brief regarding what shot the conscience in terms of a 1983 violation. They're all situations where the construction project or the renovation projects, whenever they were shut down, nothing was shut down here. Nothing was shut down at all. But there's no case that's saying that something has to be shut down in order to be substantive. I understand, but are we saying then that a municipal engineer who understands that another entity has a property right in somebody's land that can't be disturbed and all of a sudden things are being stored on that easement, which should not be stored there. I'm not saying that they're going to be stored there forever. But again, that's what we get when you answer and the case moves forward to discovery about who's right as to what's being characterized. Well, I would say this, Your Honor. If somebody wants to file a declaratory judgment to determine whether or not somebody's interpretation of the easement is correct, that's fine. I'm not saying they can't do that. What I'm saying is the allegations in the complaint, the second amendment complaint, which we're going through, I think, painstakingly, by judgment only, each and every one of them does it separately for reward, for the heart of the township, and for FOX. The second amendment complaint has to raise issues that shock the conscience. It has to raise them. And it simply doesn't. What do we really have? Well, we have a lot of activity by the defendants to thwart these plans that when push comes to shove, the defendants withdraw the suit or withdraw. I mean, and that's just what's alleged. And so you wonder, if you were a property owner and your neighbor was causing all these things to happen and it's alleged that FOX was self-dealing and making money off this escrow, I mean, these are allegations. But you can't just characterize them and say, you know, it's just a couple of phone calls to the police. It's not what the allegations are. And I'm not saying, you know, I'm just trying to figure out at what stage, you know, do we look at these things. Well, I think that the complaint, the second amendment complaint itself has to set forth allegations that reach, that allege a shock to the conscience standard. Now, I understand what Your Honor is saying, like, oh, it looks like there's an improper motive or it looks like there might have been some corruption. Here's the issue. And it's clear from the second amendment complaint that we'll deal with the FOX stuff, because I think that's more than, I mean, the stuff that's in the report is very limited. He called the police twice and allegedly told Mr. FOX, gave him the documents. Could you focus on the filing of charges under Section 105-104A? I mean, apparently they were charged with something that was dealt with in the revised plan. Is that so? I think Mr. FOX's attorney is better equipped to answer that question than I am. But the point is, that situation was litigated for, and it's in the complaint. This is not something that has to be ferreted out through discovery. It was litigated for 18 months, and it was a settlement. They didn't just withdraw the charges against Mr. Hufty. You know what, we made a mistake. There's no way we should have done it. There was 18 months of litigation, and they came to agreement. And what's important about that agreement is that, let alone the well on the property, it was going to allow them to almost compromise the easement rights in order to get done what they needed to be done for renovations. And my limited time to answer that. Well, I want to ask you another question. Sure. With respect to the township's Monell liability, and you represent the township, right? Yes, I do. Under our Hill v. Cutstown case, is Fox the final authority in town with respect to land use and that summons that went out? My understanding is he may have been, but ultimately the final authority would have been the court. Well. If he enters the summons, you know, it's just like a police officer writing a ticket. But it's unreviewable in town, right? I mean, he issues it, that's it, right? Well, I think it was going to be that got moved out of the farmhouse. It was going to be heard by a judge. It was a notice of violation and a complaint. I mean, it wasn't like all of a sudden you're guilty of this. Right. And one other point on that. In order to prove an equal protection claim under Hill, the defendant has to be treated differently than others similarly situated, having done it intentionally and having no rational basis for the treatment. I certainly think the conduct of which Fox is accused falls into the scope of what the ordinance is. It's not whether they went off the chart. And again, Mr. Huff. So you're saying there was a rational basis? Yes, absolutely there was a rational basis. And again, I can allow the account of Indiana that says that the no rational basis standard is a very difficult one to allege. And that's another issue here. The standard the complainant has is difficult. The shock to conscience theory is not something that should be taken lightly. It's something that can't just be bad. It has to shock the judicial conscience. I know I'm running a little behind. I'm sorry. Thank you, counsel. We'll hear from the next attorney. Thank you. Thank you. Thank you. Please support Mike Dolan for out of our services and Paul Fox. I'm going to go into the Paul Fox immunity argument as the substitute. One of the comments here that came out of it is that the facts are relatively complex. I really don't think they are. They're relatively simple. This is a land use issue dealing with various issues with a large piece of property and a conservation easement as well as the driving force. Well, so far I don't know what the land use issues really are. That's the problem. Well, that's an important point. When we scratch beneath the surface of all the allegations, we go down into the morass of land use issues. Where can you put dirt? How much of a buffer do you need? I don't even know what was wrong with what they were doing. And arguably there was nothing wrong. And if there was nothing wrong, then it creates an issue. But this is the job of Mr. Fox as the municipal engineer was to balance the needs or the requirements of Mr. Huff with the New Jersey conservation. Well, but then he says he's not going to get his way over his dead body. Well, obviously we dispute that. Okay, you dispute it, but it's an allegation. This is the point. I think that under the case law, especially some of the more recent cases, Taylor v. Parks, which came down in June of 2015, actually narrows the requirements of what they have to show in terms of the difficult standard plaintiff has. And it was repeated by this court in the Vestati v. Schism. And I quote from the Supreme Court, a right must be sufficiently clear that every reasonable official would have understood that what he was doing violates that right. Further, they stated, But there's a lot of right, establishing the right to enjoyment of your property, correct? I understand property rights. But in terms of the specific constitutional right, they have not stated what was violated. Is there a clear constitutional right that Mr. Fox should have realized at the time that he's looking at these applications for various work? For the barn project on the property? Dogging up soils? Should he have, at that moment, realized, hey, there might be a constitutional right that I'm violating? That is what these cases are talking about. They are making the standard much more difficult. Was this subject to briefings? If I got your, and I could be wrong, but I think your adversary said this wasn't really a subject to briefing below the district court. Correct. We, Judge McNulty, relied on the first prong of qualified immunity. We went with that. And so that was the primary emphasis in our brief was the first prong. But I think the court has to realize that even in the past six months, the message we're getting from the Supreme Court is focusing more on the second prong and narrowing the amount of folks. Yeah, a qualified immunity case came out today. Yeah, I believe that case. Actually, the other side is a Mullinex case that dealt with a police officer shooting. And I think that that was inferred. This is a police officer shooting, I think, a DUI or WUI suspect. And I think that the message we're getting is that the qualified immunity, the second prong, must be looked at much more carefully. And in this case, I do not see in any of the briefings. But, I mean, if we agree with what you're saying, isn't the right thing to do, send it back to the district court for them to consider it in the first instance? If we want a formal briefing, we can do that. My position is that we felt John McNulty resolved it on the first prong, and that's why we agreed to that issue. So that's our position on the law on immunity. If you have any specific questions, I rely upon Mr. Paxton on the substantive legal protection. Okay, thank you, counsel. Yes, sir. Good afternoon. Joseph Frank on behalf of the New Jersey Conservation Foundation. The New Jersey Conservation Foundation is a little bit different than the other dependents. You're only in because of the conspiracy charge, right? Because we're not a public official or a state actor. We're a private nonprofit entity. We hold, my client holds a conservation easement on Mr. Huff's property. Judge Stanton imposed it, right? Since he purchased it. And as a result of this, the only federal claim is conspiracy. There were state law claims. That's a separate issue that hasn't been addressed today. But it's important that the only federal claim against this, my client, is conspiracy. Because in addition to the arguments we've heard, obviously, if there's no actual depredation of civil rights, the conspiracy claim falls away also. But there are additional reasons to affirm that this missile has the conservation foundation. Because the principal element of conspiracy, the meaning of violence, is not lineage. And what we have here are the New Jersey Conservation Foundation sending a letter to Mr. Huff, copying the municipal engineer, objecting to activities taking place in the conservation easement. Sending another letter to Mr. Huff. And sending a letter to the DEQ, objecting to permits for trench digging. And we also have the official municipal engineer share some information about Mr. Huff's renovations with my client. But that doesn't state a claim for conspiracy, for meeting of the minds, or even harm Mr. Huff. It simply shows that my client was objecting to activities in the area of the easement. And the complaint says he stored construction materials within the conservation easement. Conservation easement's in the record. It says what can and can't happen. That's all fair reading from this court case here. So for those additional reasons, I would ask that the court confirm this missile has the New Jersey Conservation Foundation. Thank you. Thank you, Mr. Court. Pretty many forward points. First is, with respect to the clearly established argument that Fox is now trying to make, that argument is not made in the briefs. It's not made in the briefs below. It was not made in the briefs in this court. There's been no material change in Supreme Court law on this issue, fortunately. With respect to a couple of arguments that the township's attorneys made, I'm going to cover a couple of points. First, this is a factual matter. In point of fact, when Fox issued that notice of violation in September, October of 2009, the project was shut down temporarily. For them to say that there's been no evidence of a shutdown, that just isn't true. The complaint clearly alleges that there was no choice but to shut down construction because that was the only way to comply with the notice of violation at that point. I heard the township say several times, well, you know, Mr. Huff, he knows his property is subject to a couple of easements. And that's true. Mr. Huff's property is subject to both the ingress easement and the conservation easement. So here's the key point. Fox doesn't have any municipal authority or jurisdiction with respect to those easements. When he, in June of 2009, made Huff's compliance with whatever the two easement holders wanted to do, a condition of getting his land use approvals, Fox wasn't pursuing any legitimate municipal interest. He was pursuing a private interest of both his boss's support and his private engineering client's interest in conservation knowledge. That is part and parcel of the corrupt motive that the plaintiff has alleged here. And that was, both of those motives were motivating factors for the pattern of harassment that subsequently ensued. And, by the way, with respect to the settlement issue, here's what happened. Fox issues that notice of violation in September, October of 2009. He's got no rational basis. He knows it doesn't have any rational basis. Huff files an action in lieu of prerogative of risk, challenging that and some other issues in the state court. There's then some litigation that ensues. They have a settlement discussion. You know what the terms of the settlement were? The township dismissed that summons with prejudice, getting nothing. Is that a part of the record? Is what? Is that a part of the settlement? It may be, actually, Your Honor. I think the settlement agreement was attached to the declaration of one of the motions that was dismissed, probably filed by the township. It must be part of the records because of his first motion of opinion. So what effect does that settlement have on this case, if any? Absolutely none. As a matter of fact, Judge McNulty initially ruled that the claim was part of violation of conduct. We move to reconsideration on that universally itself and do not challenge that on appeal. It has no impact on the law. Thank you, Counsel. Thank you. Thank you, Counsel. We'll take the case under advisement. Excellent briefing and argument. Thank you, Counsel. We'll take a short recess. Apologies about that.